**David Ray CUTLER and James C. Murrell, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16535.**

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1973.

Dennis Pope, Enid, for appellants.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

## DECISION AND OPINION

BRETT, Judge:

Appellants, David Ray Cutler and James C. Murrell, who will hereafter be referred to as defendants as they appeared in the trial court, were arrested and convicted for the offense of possession of marihuana. Their trial was conducted in the District Court of Woods County, Oklahoma, Case No. CRF–70–21. Upon an agreed stipulation the two defendants were tried at the same time; and they were tried before the Judge, without a jury, on the testimony and evidence produced at the preliminary examination held on June 3, 1970. Included as part of the proceedings of the preliminary examination was defendant's motion to suppress the evidence, which was denied.

Defendant's motion to suppress was good and should have been sustained for the reason the arrest was invalid, and the subsequent search of the automobile without a search warrant was likewise invalid; consequently, the evidence introduced to sustain the conviction was improperly admitted. Therefore the judgments and sentences must be reversed and remanded with instructions to dismiss the charge against both defendants.

The testimony revealed that about 1:30 P. M. on April 30, 1970, Highway Patrol Trooper Scott was informed that the next day the two defendants would have in their possession a quantity of marihuana. On the morning of May 1st, the informer advised the trooper further that the defendants would be in an automobile, described the automobile, and gave him the name of the automobile owner. With this informa-

tion the trooper ascertained the vehicle tag number, color, and complete registration information.

Armed with the full information the trooper advised the district attorney, who informed him that neither a warrant for arrest nor a search warrant was necessary, and he instructed the trooper to establish a road-block in order to apprehend the defendants. On that same afternoon Trooper Scott and Trooper Eddings established a road-block on the road defendants were expected to use in returning to Alva. The troopers waited more than an hour before the vehicle approached the road-block. About the middle of the afternoon the defendants' vehicle reached the road-block and it was stopped by the troopers. Trooper Eddings testified that he requested the driver's license and "Mr. Murrell handed me his driver's licenses, [sic] at this time I advised them they were under arrest for possession of marijuana." When asked concerning the moment he announced the arrest of the defendants, he answered, "When I had identified him from his driver's license, because I didn't know him, [Murrell]. I knew Mr. Cutler and I advised both defendants that they were under arrest for possession of marijuana."

Trooper Eddings was asked, "[H]ad the defendant Murrell or the defendant Cutler committed any public offense in your presence in any way, shape or form?" He answered, "No, sir." The record reflects also that the only information Trooper Eddings had concerning the alleged incident was what Trooper Scott had told him.

Trooper Scott's testimony revealed that he received the information from a "known informer," whose name he did not reveal; that he obtained the accurate vehicle information; that he was informed by the district attorney that he would not require any kind of a warrant; and that of his own independent knowledge he did not know whether or not the defendants would have marihuana in their possession until after the arrest.

The testimony reveals further that after the arrest the automobile was taken some six miles to the fire department in Alva, Oklahoma, where it was immediately searched without a search warrant. A brown paper sack was found under the front seat containing "baggies" of marihuana.

Defendants' motion to suppress was pressed at the preliminary examination, at the trial, and on the motion for new trial as well; but it was denied each time. The trial judge, without a jury, found the defendants guilty, sentenced each of them to serve six (6) months in the State Penitentiary, and ordered that they each pay a $500 fine. From the judgments and sentences this appeal was perfected.

■ We consider first the arrest of the defendants. The record is clear that neither of the defendants had committed any violation of the law in the presence of the arresting officers; nor had the commission of any felony by the defendants been reported to the officers. So the arrest cannot be predicated upon the premise of an observed violation of the law, or upon knowledge that a felony had been committed, as required in 22 O.S.1971, § 196. The record is likewise clear that neither of the officers possessed actual knowledge that marihuana was in the automobile until after the arrest and search. Trooper Scott had been so informed by an alleged "reliable informer," and Trooper Eddings only knew what Trooper Scott had told him. Consequently, the arrest was not predicated upon sufficient information, known to the officers, to constitute probable cause for the arrest. Therefore, the arrest being illegal, and the search of the vehicle being accomplished without a search warrant, the evidence was inadmissible at the trial.

In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the United States Supreme Court found that the arresting officers had sufficient probable cause to arrest the four men in a "light blue compact station wagon"; hence, premised upon that probable cause, and un-

der the facts of that case, the officers were justified in searching the vehicle. But in *Chambers*, the officers knew that the service station armed robbery had already happened; and they were provided with sufficient description of the men and the vehicle. However, in the instant case, not all of those conditions existed. In *Chambers*, supra, the United States Supreme Court recited:

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search."

The instant case is distinguishable from Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), on its facts being absent any exigent circumstances. In Adams, Sergeant Connolly was confronted with an emergency situation when he removed the pistol from Williams' waistband. Likewise, the surrounding high crime district added emphasis to those exigent circumstances, but those conditions do not appear in the instant case.

Also, even though the United States Supreme Court was discussing the requirements for a search warrant for Vale's house in Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409, 414 (1970), when that Court stated:

"The officers were able to procure two warrants for Vale's arrest. They also had information that he was residing at the address where they found him. There is thus no reason, so far as anything before us appears, to suppose that it was impracticable for them to obtain a search warrant as well."

The same principle prevails herein, concerning the facts of the instant case. The authorities had ample time to obtain the necessary warrant to properly search defendant's vehicle, but no effort was exerted to obtain any warrant. It is well established that an arrest cannot be justified by reason of discoveries made after accused is taken into custody, rather than information known to arresting officers at time of arrest. Henry v. State, Okl.Cr., 494 P.2d 661 (1972); Rainbolt v. State, 97 Okl.Cr. 164, 260 P.2d 426 (1953); Jones v. State, 88 Okl.Cr. 243, 202 P.2d 228 (1949).

Therefore, for the reasons herein stated, we are of the opinion that defendants' convictions in case number CRF–70–21, should be reversed and remanded to the District Court of Woods County, Oklahoma, with instructions to dismiss the information.

It is so ordered.

BLISS, P. J., and BUSSEY, J., concur.